IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| CRAIG E.V.,<br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br>    Defendant. | Case No. 4:20-cv-04053-SLD-JEH |

### Report and Recommendation

Now before the Court is the Plaintiff's Motion for Summary Judgment (Doc. 10), the Commissioner's Motion for Summary Affirmance (Doc. 12), and the Plaintiff's Reply (Doc. 13). This matter has been referred for a Report and Recommendation. The Motions are fully briefed, and for the reasons stated herein, the Court recommends the Plaintiff's Motion for Summary Judgment be granted, the Defendant's Motion for Summary Affirmance be denied, and the matter be remanded.[1]

**I**

Craig E.V. filed an application for disability insurance benefits (DIB) on June 20, 2016. He alleged disability beginning on March 18, 2016. His DIB claim was denied initially on October 4, 2016, and he thereafter filed a request for hearing concerning his DIB application. A hearing was held on September 4, 2018 before the Honorable Robert C. Asbille (ALJ). At that hearing, Craig was represented by an attorney, and Craig, medical expert (ME) Sai Nimmagadda, M.D., and a

---

[1] References to the pages within the Administrative Record will be identified by AR [page number]. The Administrative Record appears at (Doc. 7) on the docket.

vocational expert (VE) testified. Following the hearing, Craig's DIB claim was denied on November 15, 2018. His request for review by the Appeals Council was denied on January 9, 2020, making the ALJ's Decision the final decision of the Commissioner. Craig filed the instant civil action seeking review of the ALJ's Decision on March 5, 2020.

II

At the September 2018 hearing, Craig was 53 years old and was living with his sister and niece in a house. On Form SSA-3368, Craig claimed the following conditions limited his ability to work: spinal injury; heart issues; and "left foot." AR 153.

Craig testified that he graduated from high school and previously worked on a boat doing electrical work and construction and served as a boat captain on a casino boat. He said he could no longer work because he was limited in how long he could stand, sit, and walk due to a fusion in his lumbar spine. He testified to issues with both of his elbows and that he had carpal tunnel in both hands "severely." AR 18. Craig could "somewhat" do housework, could sweep, mop, or vacuum "[o]nce in a while," did the dishes, and shopped for food. AR 18. In a typical day, he "[b]asically" watched TV. AR 19. When he went to the grocery store, Craig used an electric cart if one was available. Otherwise, he held onto a cart while he walked in the store. He most recently underwent back surgery in 2016 and no more back surgery was scheduled. He explained he had to have a fusion in his neck redone in February 2018; the fusion was originally done in 1996 or 1997. He said his neck became stiff and sore. AR 24.

ME Dr. Nimmagadda was then questioned. He testified that Craig was diagnosed with cervical, thoracic, and lumbar degenerative disc disease, status post spinal fusion L5, S1, and bilateral carpal tunnel syndrome. Dr. Nimmagadda also indicated a diagnosis that was noted "inaudible" on the hearing recording.

He testified that Craig did not meet or equal any of the relevant listings. He stated he would place Craig at the sedentary exertional level, and proceeded to detail: Craig could occasionally lift 20 pounds and frequently lift 10 pounds; he could stand and/or walk up to two hours in an eight-hour day; he could sit for about six hours in an eight-hour day; he was unlimited in the ability to push and pull; he could do ramps and stairs occasionally; he could never climb ladders, ropes, or scaffolds; he could occasionally balance, stoop, kneel, crouch, and crawl; he was unlimited in reaching in all directions; he could frequently bilaterally handle and finger; he was unlimited in feeling; and he was to avoid wetness, vibration, hazards such as dangerous machinery, unprotected heights, and "[INAUDIBLE] exposure." AR 26. After the ME rendered his opinion, the ALJ stated, "Just for the record, Counsel, the agency views this RFC as a range of light work lifting 20 pounds, lifting 10 pounds – 20 pounds occasionally, 10 pounds lifting. It's in the light range." *Id.*

Lastly, the VE was questioned. He identified jobs the hypothetical individual could perform, and he explained that he reduced the number of light jobs available based upon the individual's limitation to sitting six hours in an eight-hour work day and standing/walking two hours in that eight-hour day.

### III

The ALJ determined, at Step Two, Craig had the following severe medically determinable impairments: carpal tunnel; degenerative disc disease; coronary artery disease (CAD); and arthritis of the elbow. AR 49. At that step, the ALJ also found "obesity not to constitute a severe impairment" and "no severe mental impairment." AR 49. At Step Three, the ALJ recited ME Dr. Nimmagadda's testimony that Craig did not meet or medically equal any of the relevant listings, explained that the ME opined Craig retained a sedentary RFC, and clarified that the ME in fact "described an RFC consistent with a limited range of light work

3

activity as defined in the regulations." *Id*. The ALJ found no listing was met or medically equaled. At Step Four, the ALJ made the following residual functional capacity (RFC) finding:

> [T]he claimant has the RFC for light work as defined in 20 CFR 404.1567(b) except lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk 2 hours and sit 6 hours in an 8 hour day; no climbing ladders, ropes or scaffolds; occasionally perform postural [sic]; frequently handle and finger; no limitation on reaching or feeling, occasional exposure to wetness and vibration, none to unprotected heights or dangerous moving machinery.

AR 50.

In making the RFC finding, the ALJ considered Craig's hearing testimony regarding his physical limitations, medical findings of record, imaging results, evidence he exhibited drug-seeking behavior/malingering, and the opinion evidence of record. With regard to Craig's alleged pain from carpal tunnel syndrome, the ALJ explained Craig admitted an ability to use his hands for gross and fine manipulation and grasping. With regard to Craig's alleged neck pain and stiffness, the ALJ explained Craig was able to perform substantial gainful activity for years after cervical surgery at a medium level. The ALJ stated, "In sum, his allegations exceed the documented evidentiary support, although he has some limitations consistent with a light RFC." AR 51.

The ALJ gave "some weight" to the State Agency physician's opinions and "significant weight" to ME Dr. Nimmagadda's opinion. The former's opinions "did not address a combination of impairments, limiting the weight attributable to those opinions." AR 52.

IV

Craig argues: the ALJ's own findings require a determination of disability under the Agency's Medical-Vocational Rules; and the ALJ legally erred by failing to account for all of Craig's admitted functional limitations in his RFC findings.

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971), *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

In order to qualify for disability insurance benefits, an individual must show that his inability to work is medical in nature and that he is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for disability. *See* 20 C.F.R. § 404.1566. The establishment of disability under the Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, there must be

a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). The factual determination is made by using a five-step test. *See* 20 C.F.R. § 404.1520. In the following order, the ALJ must evaluate whether the claimant:

1) currently performs or, during the relevant time period, did perform any substantial gainful activity;

2) suffers from an impairment that is severe and meets a durational requirement, or suffers from a combination of impairments that is severe and meets the durational requirement;

3) suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;

4) is unable to perform her past relevant work which includes an assessment of the claimant's residual functional capacity; and

5) is unable to perform any other work existing in significant numbers in the national economy.

*Id*. An affirmative answer at steps 3 or 5 leads to a finding that the plaintiff is disabled. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).

The plaintiff has the burdens of production and persuasion on steps 1 through 4. *Id*. However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).

In the instant case, Craig claims error on the ALJ's part at Step Four.

**A**

The Court begins with Craig's second argument that the ALJ legally erred by failing to account for all of Craig's admitted functional limitations in the RFC finding. Specifically, Craig argues that the ALJ's outright failure to include any limitations on reaching or neck movement despite finding severe cervical and elbow impairments is critical error, and the ALJ similarly erred in his evaluation of Craig's mental impairments.

**1**

With regard to the ALJ's consideration of Craig's physical limitations, the Court does not find the ALJ committed reversible error where he gave ME Dr. Nimmagadda's opinion regarding Craig's work abilities significant weight, his RFC finding included nearly all of the physical limitations Dr. Nimmagadda described, and he otherwise sufficiently articulated his consideration of the record evidence. To illustrate, the ALJ considered that x-rays showed moderate to severe degenerative changes in Craig's cervical spine in September 2017 and that the pain was relieved with opioid medication. The ALJ further considered that Craig underwent a C4-5 extension of an old fusion and revision of the C5-6 fusion in February 2018 with resulting reduction of pain, and by July 2018, Craig was complaining solely of mid back and low back pain. He acknowledged that Craig had right ulnar head intrinsic weakness when opposing his fingers consistent with a history of hypoesthesia[2] dating back to an old forearm injury, and that carpal tunnel syndrome, cervicalgia, and cervical radiculopathy all had been diagnosed affecting that area. AR 52. The ALJ concluded his RFC assessment by stating:

> [T]he above RFC assessment is supported by the objective medical evidence and treatment records, particularly as interpreted by the

---

[2] "A dulled sensitivity to touch or other nerve stimulation." Taber's Online, https://www.tabers.com/tabersonline/view/Tabers-Dictionary/765742/0/hypoesthesia_hypesthesia?q=hypoesthesia (last visited Apr. 13, 2021).

7

> independent medical expert, Dr. Nimmagadda. Dr. Nimmagadda noted claimant's orthopedic problems coupled with his heart issues. He also allowed for pain issues for which claimant uses hydrocodone . . . The allowance for lifting is consistent with the minimal limitations on use of the arms. He could not do heavy work but lifting 20 pounds is consistent with his impairments. I give his opinion heavy weight.

AR 52.

The foregoing discussion of the record evidence and explanation for the limitations included in the RFC finding allow the Court to trace the path of the ALJ's reasoning insofar as Craig's physical limitations were concerned. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002) (emphasizing that an ALJ must "sufficiently articulate" his assessment of the evidence to assure the reviewing court that he considered the important evidence and to enable the reviewing court to trace the path of his reasoning). The Court is therefore satisfied that the administrative record in this case contains, as to Craig's physical limitations, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (providing the definition for "substantial evidence" in the context of administrative law). As the Commissioner argues, Craig essentially asks the Court to reweigh the medical evidence that the ALJ discussed and considered. The Court cannot do so. *See Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004) (explaining that in reviewing an ALJ's decision, the court cannot reweigh evidence, resolve conflicts in the record, decide questions of credibility, or otherwise substitute its own judgment for that of the Commissioner).

### 2

As for Craig's argument that the ALJ erred in his evaluation of Craig's mental impairments, the Court recommends remand. Craig emphasizes that under Agency policy, an ALJ must account for the functional limitations caused

by even non-severe impairments when formulating the RFC finding, and the Commissioner's regulations require ALJs to assess a claimant's mental impairments pursuant to a special technique (the PRT). Craig highlights the record evidence which provided that he suffered from major depressive disorder. The Commissioner counters that the ALJ's finding that Craig's depression was not "severe" at Step Two was not error because the ALJ found some combination of severe impairments such that he proceeded through the remaining steps of the sequential evaluation while considering all impairments – severe and non-severe.

The Commissioner's counter is non-responsive to the argument Craig actually makes. True, "Step two is merely a threshold inquiry; so long as one of a claimant's limitations is found to be severe, error at that step is harmless." *Ray v. Berryhill*, 915 F.3d 486, 492 (7th Cir. 2019). But Craig does not make the argument that the ALJ's failure to find a severe mental impairment at Step Two necessitates remand. Instead, Craig faults the ALJ for failing to perform the special technique despite acknowledging record evidence of recurrent major depression and finding that he suffered from depression. 20 C.F.R. § 404.1520a provides that the Social Security Administration (SSA) must follow a special technique at each level in the administrative review process when it evaluates the severity of mental impairments for adults, and under the special technique, SSA must first evaluate the claimant's pertinent symptoms, signs, and laboratory findings to determine whether he has a medically determinable mental impairment. 20 C.F.R. § 404.1520a(a), (b)(1). Section 404.1520a provides further, in relevant part:

> At the administrative law judge hearing . . . *we will document application of the [special] technique in the decision*. The following rules apply:
>
> * * *
>
> (4) At the administrative law judge hearing and Appeals Council levels, the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the

significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). *The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.*

20 C.F.R. § 404.1520a(e)(4) (emphasis added).

Here, the ALJ did not anywhere in the Decision document application of the special technique. The extent of the ALJ's discussion in his Decision as to mental impairments was as follows at Step Two:

> Several nurse practitioners have suggested in 2017 that the claimant has a recurrent mild depressive disorder during examinations but that the claimant rejects medication. Symptoms include "decreased need for sleep, depressed mood, diminished interest or pleasure, poor judgment and restlessness" but not worrying, fatigue or suicidal ideation . . . The undersigned notes his hearing testimony rejected a depressive impairment. Therefore, the undersigned finds no severe mental impairment.

AR 49. While the Seventh Circuit Court of Appeals has explained that a failure to specifically detail application of the special technique may be harmless error, the undersigned cannot say the legal error was harmless here. *See Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013) (stating that under some circumstances, "the failure to explicitly use the special technique may be harmless error") (quoting *Craft v. Astrue*, 539 F.3d 668, 675 (7th Cir. 2008)). First, the Commissioner does not make that argument and instead argues it was not error that the ALJ did not find Craig's depression "severe" because the ALJ proceeded through the remaining steps of the sequential evaluation.

Second, the ALJ failed to address whether Craig nevertheless had limitations resulting from his mental health issues that would need to be included in his RFC. *See Craft*, 539 F.3d at 675 (determining the ALJ's failure to explicitly use the special technique was not harmless "because the ALJ's failure to consider

the functional impairments during the special technique analysis was compounded by a failure of analysis during the mental RFC determination . . . ."); *compare Pepper*, 712 F.3d at 366 (omission of explicit application of the special technique was harmless at step two because the ALJ provided enough information to support the "not severe" finding and was harmless at step four where it was "apparent" the ALJ "considered all the relevant information and factors required"). Indeed, "the ALJ must consider the combination of all limitations on the ability to work, including those that do not individually rise to the level of a severe impairment." *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010) (further stating that a "failure to fully consider the impact of non-severe impairments requires reversal"). The ALJ did not consider in his assessment of the RFC at Step Four the symptoms he listed at Step Two. The ALJ only went so far as to articulate that he found Craig had "no severe mental impairment," not that Craig had no medically determinable mental impairment such that it was unnecessary to consider evidence of major depressive disorder any further.

Third, the ALJ misrepresented the evidence he *did* discuss pertaining to Craig's mental health. The Advanced Registered Nurse Practitioner (ARNP)[3], Ashley Fuller, did not "suggest" "mild depressive disorder" only in 2017. In the November 2016 record cited, ARNP Fuller wrote next to "Initial diagnosis: Consider *Major* Depressive Disorder." AR 551 (emphasis added). In the October 2017 record cited, ARNP Fuller wrote under "Assessment/Plan" "Mild episode of recurrent *major* depressive disorder (F33.0)." AR 523 (emphasis added). In the November 2017 record cited, ARNP Fuller wrote next to "Initial diagnosis:

---

[3] The current definition for "acceptable medical source" includes licensed advanced practice registered nurses. *See* 20 C.F.R. § 404.1502(a)(7). However, the previous version of Section 404.1502 that applies to Craig's DIB claim did not include ARNPs in the definition of "acceptable medical source." The ALJ did *not* give as a reason for rejecting the evidence of major depressive order that it came from a non-acceptable medical source.

11

Consider *Major* Depressive Disorder," under "Diagnosis" listed "Mild episode of recurrent *major* depressive disorder," and under Assessment/Plan wrote "Mild episode of recurrent *major* depressive disorder (F33.0)." AR 511, 513 (emphasis added). Only the November 2016 record cited indicated that while Craig was assessed with a "Positive depression screening," he declined treatment for depression. AR 548. Thereafter, ARNP Fuller's October 30, 2017 note provided in terms of Craig's depression that he reported he "has been out of paroxetine[4] and the plan was for him to restart the paroxetine. AR 521, 523. ARNP Fuller's November 29, 2017 note provided that Craig "[d]oesn't feel [depression] well controlled on medications." AR 510. At that time, Craig reported his functioning as "somewhat difficult." *Id*. 2018 records indicated Craig was prescribed the paroxetine. *See*, *e.g.*, AR 457, 460, 471 (Craig noting improvement in anhedonia since starting paroxetine), 480 (noting Craig had run out of paroxetine and that he needed to restart it), 499 (indicating "verified" status that Craig was taking paroxetine 40 mg tablet as directed in January 2018). While Craig did testify in response to whether he took medicine for anxiety or depression that "I don't believe so yet," the record does not support the ALJ's blanket characterization that Craig "rejects" medication. AR 17, 49. Moreover, Craig did not reject a depressive impairment at the hearing. In addition to his response about taking medication, he merely answered "[n]o" to the question of whether he saw a psychiatrist. AR 17.[5]

---

[4] "A selective serotonin reuptake inhibitor used as an antianxiety agent and antidepressant. It is administered orally to manage depression, panic, obsessive-compulsive disorder, social anxiety, and general anxiety. It may be used as an adjunct to psychotherapy." Taber's Online, https://www.tabers.com/tabersonline/view/Tabers-Dictionary/760276/0/paroxetine?q=paroxetine (last visited Apr. 13, 2021).

[5] In November 2017, ARNP Fuller noted that she discussed with Craig the "need to see psychiatry at his point," that Craig was "agreeable" to that, and she included a psychiatry referral. AR 513.

12

Craig also argues that the ALJ could have sought medical expert testimony if he had any questions regarding the sufficiency of the treating source's findings or otherwise found the mental health record lacking. The Commissioner insists that the need for medical expert opinion evidence is generally left to the ALJ's discretion, and it remains the claimant's burden to furnish evidence of disability. While the Commissioner is not wrong, the ALJ's treatment of the evidence of a mental impairment in this case (as discussed *supra*) makes clear he found the evidence insufficient. At that point, it was the ALJ's responsibility to recognize the need for additional evaluations. *See Bates v. Colvin*, 736 F.3d 1093, 1101 (7th Cir. 2013) (explaining that while the claimant did bear the burden of producing evidence of her impairments, "if the ALJ thought [the evidence of record discussed in the decision] insufficient – as she apparently did – it was her responsibility to recognize the need for additional evaluations"); *Scott v. Astrue*, 647 F.3d 734, 741 (7th Cir. 2011) (stating that if the ALJ found evidence in the form of the claimant's testimony and medical evidence of tremors insufficient to support a more-substantial lifting limitation, "it was [the ALJ's] responsibility to recognize the need for additional medical evaluations"). But, of course, he did not recognize that need, instead erroneously stating Craig "rejected a depressive impairment." AR 49.

Perhaps when the ALJ stated he found Craig had "no severe mental impairment" he really meant to say Craig had "no medically determinable mental impairment" such that he appropriately did not consider Craig's mental health when crafting the latter's RFC. But that is not what the ALJ said, and the *Chenery* doctrine "generally confines a reviewing court to the agency's actual rationale for its decision, not an after-the-fact justification." *Zellweger v. Saul*, 984 F.3d 1251, 1254 (7th Cir. 2021) (citing *SEC v. Chenery*, 318 U.S. 80, 87-88 (1943)). As a result,

the Decision suffers from harmful error for failure to consider what limitations in the RFC, if any, Craig's mental health issues warranted.

### B

Because the Court finds the ALJ committed legal error insofar as the RFC finding is concerned, it does not reach Craig's first argument. If the case is remanded, the ALJ will necessarily have to re-visit the RFC which Craig states currently suffers from internal inconsistency. Should the case be remanded, the Court expects the Commissioner to nevertheless keep in mind Craig's first argument.

### V

For the reasons set forth above, it is recommended that: 1) the Plaintiff's Motion for Summary Judgment (Doc. 10) be granted; 2) the Defendant's Motion for Summary Affirmance (Doc. 12) be denied; and 3) this case be remanded to the Commissioner of Social Security for further proceedings consistent with this Opinion Pursuant to 42 U.S.C. §405(g), Sentence Four.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk within fourteen (14) days after service of this Report and Recommendation. FED. R. CIV. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

*It is so recommended*.

Entered on April 14, 2021.

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE